## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| BEATRICE HULL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:05-0325 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order filed on April 19, 2005 (Doc. No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings.

The Plaintiff, Beatrice Hull (hereinafter referred to as "Claimant"), filed an application for SSI on October 25, 2002 (protective filing date), alleging disability as of January 1, 2002, due to lung disease and depression. (Tr. at 16, 60-64, 66.) The claims were denied initially and upon reconsideration. (Tr. at 35-37, 41-42.) On August 14, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 43.) The hearing was held on August 30, 2004, before the Honorable Thomas R. King. (Tr. at 275-89.) By decision dated September 30, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-25.) The ALJ's decision became the final decision of the Commissioner on February 25, 2005, when the Appeals Council denied

Claimant's request for review. (Tr. at 5-9.) On April 19, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §416.920 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had never engaged in substantial gainful activity. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of asthma, diabetes, an affective disorder, and a low average to borderline intelligence. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant had a residual functional capacity to perform a wide range of "sedentary work that involves 1-2 step tasks and that is performed in a controlled environment where the worker is not exposed to respiratory irritants." (Tr. at 23, 25, Finding 5.) At step four, the ALJ found that Claimant had no past relevant work to which she could return. (Tr. at 16.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded, that Claimant could perform jobs such as a machine operator, inspector, or grader. (Tr. at 23, 25, Finding 10.) On this basis, benefits were denied. (Tr. at 25.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on February 20, 1975, and was 29 years old at the time of the administrative hearing. (Tr. at 16, 61, 278.) Claimant has a seventh grade education and no vocationally relevant past work experience. (Tr. at 16, 278.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) finding that Claimant had a limited education as opposed to a marginal education and (2) failing to establish with clarity that there were jobs sufficient in the national economy that Claimant could perform. The Commissioner asserts that these arguments are without merit and that the decision is supported by substantial evidence.

1. Educational Level.

Claimant argues that the ALJ should have assigned her a "marginal" education instead of a "limited" education because psychological testing indicated that she read at a fourth grade level and because she participated in special education programs. (Pl.'s Br. at 3.) The Commissioner does not address Claimant's argument concerning the psychological testing. Rather, the Commissioner addresses only Claimant's attendance in special education classes and asserts that "[n]othing in the regulations provides that special education classes do not constitute formal schooling." (Def.'s Br. at

13.)

The Regulations state that an individual's education level will generally be classified as her years of formal schooling, unless there is contradictory evidence. See 20 C.F.R. §§ 404.1564(b), 416.963(b) (2004). Limited education is defined under the Regulations as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.965(b)(3) (2004). A seventh grade through eleventh grade education of formal education is generally considered a limited education. Id. Conversely, a marginal education is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 416.965(b)(2) (2004). Formal schooling at a sixth grade level or less is generally considered a marginal education. Id.

Claimant testified that she completed the seventh grade and dropped out of school in the eighth grade, which grade level she was repeating, after being removed from special education classes. (Tr. at 278, 283.) Claimant had previously repeated kindergarten. (Tr. at 283.) She further testified that she was able to read and write "[a] little, not a lot." (Tr. at 278.) Claimant's seventh grade educational level therefore suggests that she had a limited education as the ALJ found. However, psychological testing conducted by Judith F. Lucas. M.A., on January 24, 2003, revealed a Verbal IQ of 70, a Performance IQ of 63, and a Full Scale IQ of 65 on the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III). (Tr. at 144.) Ms. Lucas questioned the validity of these scores because it was not clear whether Claimant put forth her best effort. (Id.) On the Wide Range Achievement Test - Revision 3 (WRAT-3), Ms. Lucas determined that Claimant was reading at a fourth grade level and performing arithmetic at a fifth grade level. (Tr. at 144.) Concerning the validity of this test, Ms. Lucas noted that Claimant put forth adequate effort, and therefore, was not clear whether the scores were valid. (Tr. at 145.) She

diagnosed Claimant with having borderline intellectual functioning. (Tr. at 145.) On October 28, 2003, Ms. Lucas repeated the WAIS-III and WRAT-3 exams as part of a further psychological evaluation. (Tr. at 227-29.) Claimant received a Verbal IQ of 74, a Performance IQ of 75, and a Full Scale IQ of 72. (Tr. at 228.) The scores on the WRAT-3 exams remained the same. (Tr. at 228.) Ms. Lucas noted that Claimant was slow to respond during testing, but that she put forth adequate effort. (Tr. at 229.) She further noted that Claimant participated in special education services in school and concluded that the test scores were valid. (Id.) Ms. Lucas diagnosed Claimant with continued borderline intellectual functioning. (Id.) The undersigned notes that on May 30, 2003, prior to Ms. Lucas' second evaluation, Dr. Charles Scharf, M.D., a staff psychiatrist working with Dr. Eitel, Claimant's treating psychiatrist, estimated Claimant's Global Assessment of Functioning ("GAF") at 50. (Tr. at 181.) On July 12, 2004, however, Dr. Eitel estimated her GAF at 65.[1] (Tr. at 260.)

Claimant argues that because the ALJ accorded more weight to the opinion of Ms. Lucas, than he did her treating psychiatrist, Dr. Eitel, then the ALJ should have found based on psychological testing that she had a marginal education. (Pl.'s Reply at 2.) The undersigned finds Claimant's argument persuasive. The Regulations provide that contradictory evidence may rebut a claimant's formal schooling and educational level. See 20 C.F.R. § 404.1564(b) (2004). "A claimant's formal education is conclusive proof of his educational abilities under the regulations only if no evidence is presented to contradict it." Walston v. Sullivan, 956 F.2d 768 (8th Cir. 1992). The ALJ noted that Claimant had a seventh grade education, could read and write, and possessed

---

[1] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994). A GAF of 65 indicates that the person has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, having some meaningful interpersonal relationships. *Id.*

a valid driver's license. (Tr. at 16, 22.) He further noted the psychological testing conducted by Ms. Lucas. (Tr. at 21-22.) Nevertheless, he does not explicitly explain his finding that Claimant had a limited education. (Tr. at 23.) The combined effect of Claimant's psychological testing, her past participation in special education classes, and her statement that she could read and write only "a little," contradicts her formal seventh grade educational level. Accordingly, the undersigned finds that Claimant had a marginal education and that substantial evidence does not support the ALJ's finding that Claimant possessed a limited education.[2]

2. Jobs Existing in Significant Numbers in the National Economy

Claimant further argues that the ALJ erred in finding that there were other jobs Claimant could perform, despite her impairments, which existed in significant numbers in the national economy. (Pl.'s Br. at 4-7.) Claimant argues that there are more than 200 listings for the job of inspector contained in the U.S. Department of Labor, Dictionary of Occupational Titles ("DOT") (4th ed. 1991), and that only 25 of these listing are classified as sedentary in exertion, but none are considered to be unskilled jobs. (Pl.'s Br. at 5.) She asserts that 22 of the inspector jobs are considered unskilled, but none are sedentary. (Id.) Concerning the job of grader, Claimant notes that there are nine listings in the DOT, none of which are classified as sedentary in exertion. (Id.) Three of the nine listings are classified as unskilled, but none are sedentary. (Id.) Finally, with respect to

---

[2] It is significant to note that a finding of a marginal education does not necessarily result in a finding of disabled. Rather, the Regulations provide that a finding of disabled may be appropriate for younger individuals

> who do not have the ability to perform a full range of sedentary work. Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(3) (2004).

the job of machine operator, Claimant notes that there are nine listings in the <u>DOT</u>, two of which are unskilled, but none of which are sedentary.[3] (<u>Id.</u>) The Commissioner "concedes that the ALJ's testimony on its face conflicts with the DOT." (Def.'s Br. at 11.) Nevertheless, the Commissioner, relying on Social Security Ruling ("SSR") 00-4p, argues that the VE testified that some of the positions "could be performed at the sedentary exertional level because the DOT lists the maximum, as opposed to the minimum, exertional level at which this job could be performed." (Def.'s Br. at 12.) The Commissioner notes that at least six inspector positions are categorized at the light exertional and unskilled levels. (<u>Id.</u>)

The ALJ determined that Claimant has the RFC to perform sedentary work which involves one and two step procedures and does not expose her to concentrations of respiratory irritants. (Tr. at 23.) At the administrative hearing, the ALJ asked the VE to assume a person of Claimant's age, education and vocational profile, who was capable of simple, unskilled sedentary work with the additional environmental limitations as outlined above, and questioned what jobs such a person could perform. (Tr. at 285-88.) The VE responded that such a person could perform the sedentary jobs of machine operator, inspector, or grader. (Tr. at 285-88.) The VE testified to the number of jobs in each position which existed in the national and regional economies. (Tr. at 285.) Although he did

---

[3] Claimant's counsel notes that these figures were based on those set forth in the Appeals Council letter submitted by prior counsel. (Pl.'s Br. at 5.) Current counsel asserts that his research returned 130 references for the job of grader, 741 references for the job of inspector, and 1,477 references for the job of machine operator. (Pl.'s Br. at 6.) The undersigned has identified the following grader positions performed at the sedentary exertional level, none of which however, are unskilled: § 343.687-010 Plastic Card Grader, § 689.687-062 Raw Silk Grader, § 520.361-010 Honey Grader & Blender, § 734.687-038 Button Grader, § 579.684-014 Crayon Grader, § 770.281-010 Diamond Selector/Grader, and § 939.167-010 Ore Grader.

not provide the corresponding <u>DOT</u> numbers for the positions, the VE further testified that the skill and exertional levels are consistent with the <u>DOT</u>. (Tr. at 285.)

Claimant is essentially correct in her summary of the <u>DOT</u> job descriptions, as the Commissioner candidly admits. <u>See generally</u>, U.S. Department of Labor, <u>Dictionary of Occupational Titles</u> (<u>DOT</u>) (4th ed. 1991). None of the job descriptions in the <u>DOT</u>, however, are entirely consistent with the ALJ's RFC of unskilled and sedentary work. Social Security Ruling 00-4p provides that the <u>DOT</u> lists the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, 2000 WL 1898704, *3. The Ruling recognizes that the vocational expert "may be able to provide more specific information about jobs or occupations than the DOT." <u>Id.</u> In the instant case, however, the VE testified that his descriptions of the machine operator, inspector, and grader jobs were consistent with the <u>DOT</u> and he did not provide any further information about the jobs. Thus, there was an apparent conflict between the jobs identified by the VE that Claimant could perform given her RFC and the description of the jobs contained in the <u>DOT</u> which was not resolved by the ALJ. Accordingly, the undersigned finds that the ALJ was not entitled to rely upon the testimony of the VE, that the jobs identified by the VE do not constitute a significant number of jobs existing in the national economy to meet the Commissioner's burden at step five, and therefore, the ALJ's finding at step five was not supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **GRANT** the Plaintiff's Motion for Judgment on the Pleadings, **DENY** the Defendant's Motion for Judgment on the Pleadings, **VACATE** the final decision of the Commissioner, and **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 31, 2006.

R. Clarke VanDervort
United States Magistrate Judge